1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMMY W.,

                     Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                     Defendant.

CASE NO. 2:24-cv-02014-DGE

ORDER REVERSING AND
REMANDING FOR FURTHER
PROCEEDINGS

# I    INTRODUCTION

Plaintiff Tammy W. appeals, pursuant to 42 U.S.C. § 405(g), from the Social Security

Administration's ("SSA") decision denying her disability insurance benefits ("DIB").  Applying

the familiar five-step analysis for DIB cases, an Administrative Law Judge ("ALJ") found that

she had "severe" mental and physical impairments at Step Two; that that these impairments did

not meet listing criteria and that she had "mild" or "moderate" mental limitations according to

the "Paragraph B" criteria at Step Three; that she had a Residual Functional Capacity ("RFC")

for light work that was "goal oriented as opposed to one in which a specified pace be maintained

throughout a workday"; and relying on testimony of a vocational expert ("VE"), the ALJ found at Step Four that she could do her Past Relevant Work ("PRW") as an insurance agent.  The ALJ did not credit psychiatric medical opinion evidence, finding it internally contradictory, and did not credit Plaintiff's subjective complaints.

Plaintiff appears to raise only two narrow issues on appeal, one of which is easily dispensed with, the other of which is a closer question.  One, Plaintiff argues that because the ALJ found "severe" mental impairments at Step Two, Plaintiff must have been limited to simple or unskilled work in the RFC.  This argument is unsupported by any binding authority, and the Court rejects it.  Two, Plaintiff argues that the ALJ failed to incorporate her "mild" mental limitations into the RFC, and this was error.  As to the second argument, courts have consistently held that there is no requirement for the ALJ to impose a restriction in the RFC based on a "mild" limitation, but the ALJ is required to at least consider those mild limitations and explain their reasoning.  Though the ALJ included a boilerplate statement that the RFC incorporated all of the Paragraph B limitations, the opinion provides little or no reasoning as to how it did so.  On this record, the Court cannot say that this was harmless error.  That is because during the ALJ hearing, the VE testified that a person who could not follow complex instructions could <u>not</u> do Plaintiff's PRW, and Plaintiff's "mild" limitations related to her ability to follow complex instructions—according to SSA's own definition of the relevant Paragraph B criteria.  Plaintiff further argues that she is entitled to an outright award of benefits because her PRW is more than five years old or because it is dictated by Medical-Vocational Rules, but the Court will follow the ordinary rule and let an ALJ consider those arguments in the first instance.  Accordingly, the Court remands for further proceedings.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## II      PROCEDURAL BACKGROUND

Plaintiff Tammy W. filed a DIB application on February 22, 2021, alleging disability beginning January 1, 2018.  AR 17.  That claim was denied on December 8, 2021, and again on reconsideration on August 8, 2022.  *Id.*  On September 29, 2023 Plaintiff had a video hearing before an ALJ, where she was represented by counsel.  *Id.*  On January 3, 2024, the ALJ issued an unfavorable decision.  AR 14–29.  SSA's Appeals Council denied her request for review.  AR 1–3. She filed a complaint in this Court pursuant to 42 U.S.C. § 405(g), seeking review of that decision.

## III      STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of social security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record as a whole.  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).  The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Although the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational.  *Ford*, 950 F.3d at 1154.  This Court "may not reverse an ALJ's decision on account of an error that is harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## IV      SUMMARY OF THE ADMINISTRATIVE RECORD

### A.  Initial Determination and Reconsideration

Plaintiff filed her initial claim for disability alleging that she suffered from arthritis affecting her arms and hips, diabetes, neuropathy causing pain in her feet and hands, hypertension, and depression.  AR 60.  A physical exam noted she had psoriasis on her legs, elbows, and ears, and high glucose.  *See* AR 61.  The examiner found that Plaintiff suffered from diabetes, which was "severe," but did not find a disability, noting that there was insufficient medical evidence to give an opinion.  *See* AR 60–63.  At the reconsideration level, Plaintiff complained of the same conditions as at the initial level as well as "[p]ain throughout entire body - pinching pain, [c]annot type at all hands are nearly immobile."  AR 65.  The examiner found that she had two conditions that were non-severe, diabetes and psoriasis, and found she was not disabled, again noting lack of evidence in the record.  *See* AR 65–68.

**B.  ALJ Hearing Testimony**

Following those denials, Plaintiff had a hearing before an ALJ.  Plaintiff stated that she was disabled as of January 1, 2018, and before that she was a licensed insurance agent, selling auto, home, and life insurance policies for various agencies.  AR 40–42.  She did not do heavy lifting.  AR 42.  As to her symptoms, Plaintiff stated, "I can't sit for very long at all. I have to move around, get up and readjust myself constantly because of the pain that I have. So maybe 10, 15 minutes at a time I can sit, you know, and I'm still moving in that – you know, under those circumstances."  AR 43.  She attributed this to nerve pain from her diabetes, and arthritis. *Id.*  She stated that she can no longer drive because of the pain she experiences while sitting; she goes to the grocery store via public transit but has someone assist her.  AR 44–45.  Medication has been ineffective so far at managing the pain.  AR 45.  As to the "mental side of things," Plaintiff stated that "I have a hard time focusing, because I'm constantly hurting . . . I can't focus very well.  And it causes even problems in my just day to day lifestyle, because I don't listen

very well when I'm, you know, uncomfortable all the time." AR 46.  She stated "I don't have great memory anymore" because of the pain.  *Id.*  Likewise, she stated "I can't multitask" and "I struggle with organization." *Id.*  As to interacting with others, "I get really bad anxiety when I'm in a crowd. . . I have anxiety like crazy when I'm amongst more than two or three people, so I'm just better one on one." AR 47.  She cannot sleep for more than four or five hours at a time because of nerve pain.  *Id.*  When asked by the ALJ if she could return to past work in insurance, Plaintiff stated "[i]t's a stressful environment," and it would be difficult both because of the pain she experiences sitting and because people are "aggressive" and "I can't handle confrontation. . . I just can't."  AR 49–50.

Upon questioning from her attorney, Plaintiff confirmed that her insurance license had lapsed.  AR 50.  She has lingering pain from neck surgery after a car accident that has "gotten progressively worse."  AR 51.  The numbness in her hands is "pretty frequent" to the point that "I don't even measure it anymore, because it all goes together for me."  *Id.*  For that reason, "I tend to drop things really easily."  AR 52.  When asked to rate her average pain on a scale of 1 to 10, she stated "I don't think it ever goes under like a six, but I'm – when the nerve pain comes, it's very high. It's painful."  AR 52.

The ALJ questioned the VE about Plaintiff's past work.  The VE stated that work as an insurance agent is listed as code 250.257-010 in the Dictionary of Occupational Titles ("DOT"), is classified as "light," and described it as "performed at the sedentary level." [1]   AR 54.  The

---

[1] SSA regulations define "Light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you

ALJ asked if a hypothetical person subject to a light work restriction who "requires a setting that is goal-oriented, versus requiring that a specified pace be maintained constantly throughout a workday," and who cannot climb ladders, ropes or scaffolds, could perform that past work. AR 54. The VE answered "Yes." *Id.* The ALJ then asked if a person could do the past work if they "would be capable of understanding, remembering, and carrying out detailed but not complex instructions," and the VE answered "I don't believe so . . . I think this would require that the person be able to follow complex instructions." AR 54–55. A person in that circumstance could do unskilled, light work such as being a cashier—but this hypothetical person would not have gained any transferrable skills for that work. AR 55. The ALJ then modified the hypothetical again, asking if a person who "would be capable of understanding, remembering, and carrying out simple instructions" would be able to do the past work, and the VE again replied "No." AR 56. When asked if a person who "would be expected to be absent or off task 15 percent of the workday" could do any work in the national economy, the VE answered "No." *Id.* Finally, when asked what information he was relying upon, the VE clarified that information about absenteeism and pace of work is not contained in the DOT, but he was relying on "my knowledge and background in rehabilitation for 30-plus years." *Id.*

### C. ALJ Decision

The ALJ followed the sequential five-step analysis. 20 C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in "substantial gainful activity." AR 20. At Step

---

must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). The regulations provide a separate definition for "Sedentary work," *see* 20 C.F.R. § 404.1567(a).

1    Two, the ALJ found that Plaintiff had the following "severe" impairments: cervical

2    radiculopathy, psoriasis, type II diabetes, major depressive disorder, adjustment disorder with

3    anxiety, and post traumatic stress disorder.  *Id.*  There was evidence in the record of other non-

4    severe ailments that were receptive to treatment and limited in duration.  *See id.*  At Step Three,

5    the ALJ found that none of the "severe" impairments met the severity of the Listing of

6    Impairments, citing listings 1.15 (cervical spine disorders), 8.09 (chronic skin conditions), and

7    9.00B(5) (diabetes).  AR 20–21.  As to Plaintiff's mental impairments, the ALJ conducted an

8    analysis using the Psychiatric Review Technique ("PRT").  Under this system, the ALJ is

9    required to evaluate a claimant's mental functioning in four categories, referred to as "Paragraph

10   B" criteria, and must score each on a scale of "no" limitation, "mild" limitation, "moderate"

11   limitation, "marked" limitation, or "extreme" limitation.  *See* 20 CFR § 404.1520a.  The

12   Paragraph B criteria are: [2]

13       1.  **Understand, remember, or apply information (paragraph B1)**: This area of
        mental functioning refers to the abilities to learn, recall, and use information to
14          perform work activities. Examples include: understanding and learning terms,
        instructions, procedures; following one- or two-step oral instructions to carry out a
15          task; describing work activity to someone else; asking and answering questions and
        providing explanations; recognizing a mistake and correcting it; identifying and
16          solving problems; sequencing multi-step activities; and using reason and judgment to
        make work-related decisions. . . .

17
         2.  **Interact with others (paragraph B2)**: This area of mental functioning refers to the
18          abilities to relate to and work with supervisors, co-workers, and the public. Examples
        include: cooperating with others; asking for help when needed; handling conflicts
19          with others; stating own point of view; initiating or sustaining conversation;
        understanding and responding to social cues (physical, verbal, emotional); responding
20          to requests, suggestions, criticism, correction, and challenges; and keeping social
        interactions free of excessive irritability, sensitivity, argumentativeness, or
21          suspiciousness. . . .

22

23   [2] Soc. Sec. Admin., Listing Criteria 12.00E,
     https://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-
24   Adult.htm#12_00E.

3.  **Concentrate, persist, or maintain pace (paragraph B3)**: This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. . . .

4.  **Adapt or manage oneself (paragraph B4)**: This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions. . . . .

Here, the ALJ found that Plaintiff has a "mild" limitation with respect to "understand, remember, or apply information," a "mild" limitation with respect to "interact with others," a "moderate" limitation with respect to "concentrate, persist, or maintain pace," and a "mild" limitation with respect to "adapt and/or manage oneself." AR 23.

Based on those determinations, the ALJ found that Plaintiff had an RFC to perform light work subject to the following limitations: "requires a setting that is goal oriented as opposed to one in which a specified pace be maintained throughout a workday and cannot climb ladders, ropes, or scaffolds." AR 24. As to the credibility of Plaintiff's testimony, the ALJ found that "the claimant's 'medically determinable' impairments could reasonably be expected to produce the alleged symptoms; however, several of the claimant's statements, concerning the intensity, persistence, and limiting effects of these symptoms, were not fully consistent with the totality of the treatment evidence." AR 25. As to Plaintiff's mental capacity, the ALJ noted that Plaintiff had stopped taking an antidepressant shortly after it was prescribed and did not wish to restart that or another medication, and she had told providers that her mood was "ok." AR 25–26; *see*

*also* AR 388 (medical treatment notes reporting that Plaintiff did not want to take the medication because she "[d]id not like how [it] felt."). Based on that, "the objective medical record does not support the degree of impairment alleged by the claimant." AR 26. The ALJ stated that "[t]he undersigned more than adequately accommodated for the claimant's 'severe' impairments by reducing her to light work activity with the additional nonexertional limitations as defined in the residual functional capacity contained herein." *Id.* The ALJ did not credit the psychological opinion of Dr. Jenna Yun, who found that Plaintiff had "moderate" or "marked" limitations in her ability to "understand, remember, and follow detailed instructions," among other areas, because, according to the ALJ, Dr. Yun's opinion was inconsistent with Dr. Yun's finding that Plaintiff could "recall what she ate the night before, recall 2 out of 3 words after a delay, spell WORLD forward and backward" and similar tests. AR 26–27. Further, Dr. Yun's opinion was "based only on a snapshot of the claimant's ability to function on the date of the one-time examination via a telephone call." AR 27. The ALJ found that Plaintiff's subjective complaints of pain were not entirely supported by the medical record. *Id.* As a result, "the objective medical findings and the claimant's treatment history did not support a more restrictive residual functional capacity than the one set forth herein." AR 28.

Finally, at Step Four, the ALJ found that Plaintiff could perform her PRW as an insurance agent, because it was not precluded by the RFC. AR 28. The ALJ relied on the testimony of the VE that a person with an RFC as described above could perform the PRW. AR 28–29. Because Plaintiff could perform her PRW, she was not disabled. AR 29. Based on the finding that Plaintiff could perform her PRW, there was no need to continue to Step Five.

1

2
**V        DISCUSSION**

3        As noted *supra*, Plaintiff only challenges how the ALJ translated her mental limitations

into the RFC.  (*See* Dkt. No. 8 at 2.)[3]  Accordingly, the Court only addresses that issue. [4]

4    **1.  The ALJ's Finding of a "Severe" Mental Impairment at Step Two Did Not**

5       **Require a Limitation in the RFC**

6        First, Plaintiff argues that because the ALJ found that Plaintiff had a "severe" mental

7 impairment, "**as a matter of law** the claimant's ability to perform basic work activities is

8 significantly limited."  (Dkt. No. 8 at 5) (citing 20 C.F.R. § 404.1522(a)).  Plaintiff then argues

9 that the ALJ erred by placing "no specific limitation on the ability to perform any basic work

10 activity under 20 C.F.R. § 404.1522(b)" and by placing "no limitation whatsoever on the ability

11 to understand, carry out, and remember **SIMPLE** instructions."  (*Id.* at 7.)[5]

12        To the extent Plaintiff argues that identifying a "severe" mental impairment at Step Two

13 of the sequential analysis requires a corresponding limitation in the RFC, this argument fails.

14 The Ninth Circuit has been clear that the Step Two inquiry is "merely a threshold determination

15 meant to screen out weak claims."  *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing

16

17 _____

[3] By extension, Plaintiff does not challenge the ALJ's decision not to credit her testimony, nor
18 the ALJ's decision not to credit the opinion of Dr. Yun, so the Court does not analyze those
aspects of the ALJ opinion.  Generally, issues not raised are waived on appeal.  *Greger v.*
19 *Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).

[4] The Commissioner also notes that Plaintiff's opening brief exceeded the Court's word limits,
20 and the Court may decline to consider the issues raised as a result.  (Dkt. No. 10 at 3.)  Plaintiff's
counsel acknowledges and apologizes for the error but asks that it not be held against Plaintiff.
21 (Dkt. No. 11 at 1.)  In the interest of resolving this matter on the merits, the Court reviewed
Plaintiff's brief as submitted.  In the future, the Court may strike portions of a brief that exceed
22 applicable limits.

23 [5] The regulation Plaintiff cites, 20 C.F.R. § 404.1522 describes how SSA defines "an
impairment(s) that is not severe"—but it does not state any limitations or restrictions that must
24 accompany an impairment that *is* severe.

1    *Bowen v. Yuckert*, 482 U.S. 137, 146–147 (1987)).  The Step Two inquiry "is not meant to

2    identify the impairments that should be taken into account when determining the RFC."  *Id.* at

3    1048–1049.  If the ALJ identifies a "severe" impairment at Step Two, the analysis merely

4    continues to Step Three.  *See* 20 C.F.R. § 404.1520(c).  Thus, the Court rejects Plaintiff's

5    argument that because she was found to have a "severe" mental impairment at Step Two, the

6    ALJ was required to impose any particular restriction on her work.

7        **2.    The ALJ Did Not Adequately Explain Why Limitations Identified at Step Three**

8             **Were Not Incorporated in the RFC**

9        Next, Plaintiff argues that the ALJ erred by finding that Plaintiff had various "mild"

10   mental limitations at Step Three using the Psychiatric Review Technique ("PRT") but failing to

11   consider those limitations in formulating the RFC.  (Dkt. No. 8 at 8–19.)  The ALJ's opinion

12   does state that "[t]he following residual functional capacity assessment reflects the degree of

13   limitation the undersigned has found in the 'paragraph B' mental functional analysis."  AR 23.  It

14   also states that "[t]he undersigned more than adequately accommodated for the claimant's

15   "severe" impairments by reducing her to light work activity with the additional nonexertional

16   limitations as defined in the residual functional capacity contained herein."  AR 26.  The

17   Commissioner argues that these statements were sufficient to support the ALJ's finding that

18   greater limitations were not required.  (*See* Dkt. No. 10 at 5, 14.)  The Court disagrees.

19       This Court and others have held that an ALJ is not required to impose any restriction in

20   the RFC based on a "mild" mental limitation but does need to at least consider the issue.[6]  The

21

22   ───────────────
     [6] SSA regulations provide that a mental limitation that is "none" or "mild" is generally "not
23   severe, unless the evidence otherwise indicates that there is more than a minimal limitation in
     your ability to do basic work activities."  20 C.F.R. § 404.1520a(d)(1).  But regardless, in
24   formulating the RFC, the ALJ must consider "all of [a claimant's] medically determinable

1    "mental limitations identified at step three of the sequential evaluation process are not an RFC

2    assessment," but in formulating the RFC between Steps Three and Four, "the ALJ must consider

3    the step three limitations along with all the relevant evidence." *Wendy C. v. Comm'r of Soc. Sec.*,

4    No. 3:19-CV-05486, 2020 WL 3287286, at *6 (W.D. Wash. June 18, 2020).  Therefore, "the

5    question is not whether the ALJ's paragraph B findings are consistent with the RFC, but whether

6    the ALJ has provided an adequate explanation for the mental limitations contained in the RFC." [7]

7    *Id.*  Some courts have "found that a statement from the ALJ that the degree of limitation found in

8    the paragraph B mental functional analysis was incorporated into the RFC is sufficient to meet

9    the requirements set forth in Social Security regulations." *Id.* (collecting cases).

10          But numerous other courts, including in the Ninth Circuit, have held that boilerplate

11   statements are insufficient to explain why mental limitations identified by the ALJ do not find

12   expression in the RFC.  In *Andrick v. Commissioner of Social Security Administration*, the court

13   found the statement that "[t]he following [RFC] assessment reflects the degree of limitation the

14   undersigned has found in the 'paragraph B' mental function"—identical to the ALJ's statement

15   in this case—to be inadequate for "proffering an explanation for excluding mental limitations

16   from the RFC," calling that argument a "nonstarter."  669 F. Supp. 3d 819, 823 (D. Ariz. 2023).

17   The court reasoned that the boilerplate language "merely suggests that if a paragraph B limitation

18   doesn't appear in the RFC, it's because the ALJ found that it wouldn't restrict Claimant's ability

19   _____

20   impairments of which we are aware, including your medically determinable impairments that are
     not "severe[.]"  20 C.F.R. § 404.1545(a)(2).

21   [7] Plaintiff cites *Wells v. Colvin*, 727 F.3d 1061, 1068–1071 (10th Cir. 2013) for the proposition
     that an ALJ must explain why mental limitations are omitted from an RFC, and further argues

22   that because the Commissioner did not issue an Acquiescence Ruling as to *Wells*, the decision
     must be consistent with agency policy.  (Dkt. No. 8 at 11, 16–17.)  The Commissioner argues

23   that *Wells* is not binding, and Ninth Circuit caselaw is clear.  (Dkt. No. 10 at 16.)  The Court
     does not perceive any direct contradiction between *Wells* and in-circuit precedents, and treats it

24   as persuasive authority, as it would any other out-of-circuit precedent.

1    to work" but remand was needed "so the ALJ can explain how and why he reached that

2    conclusion." *Id.*  District courts around the country have reached the same conclusion.  *See*

3    *Victor R. v. O'Malley*, No. 3:23-CV-00501-GPC-BGS, 2024 WL 392616, at *5 (S.D. Cal. Feb. 1,

4    2024), *report and recommendation adopted,* No. 23-CV-00501-GPC-BGS, 2024 WL 1257277

5    (S.D. Cal. Mar. 25, 2024) (rejecting the statement that the RFC "reflects the degree of limitation"

6    from the paragraph B analysis as insufficient, and collecting cases); *Castillo v. Kijakazi*, 599 F.

7    Supp. 3d 483, 485–486 (W.D. Tex. 2022) (reversing where an ALJ found "mild" limitations in

8    all four Paragraph B domains but did not include any mental restriction in the RFC, without

9    explanation); *Vrdoljak v. Kijakazi*, 665 F. Supp. 3d 923, 930–931 (N.D. Ill. 2023) (reversing an

10    ALJ who failed to "build the necessary 'logical bridge' between the evidence of [claimant's]

11    mental limitations and the conclusion that those limitations required no restrictions in her RFC"

12    because "boilerplate language does not 'connect the dots' in explaining why [claimant's] mental

13    limitations do not affect her capacity" to work).[8]

14        The Court finds that on this record the ALJ's boilerplate statements do not provide "an

15    adequate explanation for the mental limitations contained in the RFC."  *Wendy C.*, 2020 WL

16

17    _____

18    [8] In an unpublished decision, the Ninth Circuit held that an ALJ was "required to consider" a
      claimant's "mild" mental limitations in an RFC, holding that "while the ALJ was free to reject
      [the claimant's] testimony as not credible, there was no reason for the ALJ to disregard his own

19    finding that [claimant's] nonsevere PTSD caused some 'mild' limitations in the areas of
      concentration, persistence, or pace."  *Hutton v. Astrue*, 491 F. App'x 850, 851 (9th Cir. 2012).

20    As the Commissioner points out (Dkt. No. 10 at 11), a more recent unpublished Ninth Circuit
      decision declined to follow *Hutton*: *Alexander v. O'Malley*, No. 23-55213, 2024 WL 612877, at

21    *1 (9th Cir. Feb. 14, 2024).  In *Alexander*, the court held that there was no error in failing to
      include a mild mental limitation where the "claimant identified no specific 'evidence that the

22    ALJ failed to consider or explain.'"  *Id.* (quoting *Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir.
      2022)).  Further, the evidence the claimant did identify, "that she was anxious in group therapy

23    and struggled managing her stress," was insufficient to justify a more restrictive RFC.  *Id.*  As
      explained throughout this opinion, the Court finds that in this case, there was record evidence

24    (the VE testimony in particular) that needed greater explanation and consideration.

1    3287286, at *6.  Although the ALJ did not credit Plaintiff's subjective testimony nor medical

2    opinion testimony[9]—which Plaintiff does not contest—the ALJ still found that Plaintiff had a

3    "mild" limitation with respect to her ability to "understand, remember, or apply information."

4    AR 23.  SSA's definition of the Paragraph B1 criteria explains that this relates to a claimant's

5    ability to "learn, recall, and use information to perform work activities" and their capacity for

6    "understanding and learning terms, instructions, procedures; [and] following one- or two-step

7    oral instructions to carry out a task." (emphasis added).[10]  But these limitations with respect to

8    following instructions find no expression in the RFC, which the ALJ formulated as: "requires a

9    setting that is goal oriented as opposed to one in which a specified pace be maintained

10   throughout a workday and cannot climb ladders, ropes, or scaffolds."  AR 24.

11        Here, the ALJ's exchanges with the VE reveal that inclusion or exclusion of a limitation

12   on following instructions in the RFC was outcome–determinative.  When asked if a claimant

13   with an RFC that included no limitation on following instructions could do the PRW, the VE

14   answered "Yes."  AR 54.  But when the ALJ asked if a person who could follow "detailed but

15   not complex instructions" could do the PRW, the VE responded, "I don't believe so," because

16   this PRW "would require that the person be able to follow complex instructions."  AR 54–55.

17   Likewise, in response to another modified hypothetical, the VE again affirmed that a person who

18   "would be capable of understanding, remembering, and carrying out simple instructions" would

19   not be able to do Plaintiff's PRW.  AR 56.  The ALJ's hearing decision relies on the VE's first

20

21   [9] The Ninth Circuit has held that an "ALJ's assessment of a claimant adequately captures
     restrictions related to concentration, persistence, or pace where the assessment is consistent with
22   restrictions identified in the medical testimony."  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169,
     1174 (9th Cir. 2008).  But here, the ALJ rejected the medical testimony, so the Court looks to the
23   record as a whole for support for the ALJ's formulation of the RFC.

24   [10] Listing Criteria 12.00E, *supra* note 2.

1  response, that a person with an RFC that has no instructions–limitations can do the PRW, but

2  says nothing of the VE's negative responses when asked about an RFC with limitations on

3  following instructions.  *See* AR 28–29.  But the ALJ can only rely on the VE's testimony if the

4  RFC is properly formulated.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir.

5  2009) ("If an ALJ's hypothetical [to the vocational expert] does not reflect all of the claimant's

6  limitations, then 'the expert's testimony has no evidentiary value to support a finding that the

7  claimant can perform jobs in the national economy.'") (quoting *DeLorme v. Sullivan*, 924 F.2d

8  841, 850 (9th Cir. 1991)).  In *Lingenfelter v. Astrue*, the Ninth Circuit reversed and awarded

9  benefits where hypothetical questions to the VE that incorporated limitations from the medical

10  expert established that the claimant was disabled, but the ALJ provided insufficient explanation

11  to discredit the medical testimony and exclude those limitations.  504 F.3d 1028, 1041 (9th Cir.

12  2007).  Here, in light of the ALJ's own finding that Plaintiff has a limitation—albeit a mild

13  one—in her capacity for following instructions, and the VE's testimony that a claimant's

14  capacity to follow complex instructions was determinative of their ability to do the PRW, at least

15  *some* explanation was required as to why a limitation in the RFC on following instructions was

16  unnecessary.

17      Thus, this case is like those where boilerplate language as to mental limitations in the

18  RFC has been found insufficient.  As noted *supra*, the ALJ's summary statement that the RFC

19  "reflects the degree of limitation" from the Paragraph B analysis, AR 23, is the same one rejected

20  as a "nonstarter" in *Andrick*, 669 F. Supp. 3d at 823, and in *Victor R.*, 2024 WL 392616, at *5.

21  And as in *Vrdoljak*, the ALJ here failed to build a "logical bridge" between the finding that

22  Plaintiff had a "mild" limitation with respect to her capacity for understanding, remembering,

23  and applying information, and the conclusion that the limitation required no restriction in her

24

1   RFC.  The boilerplate language that the RFC "reflects the degree of limitation" from the

2   Paragraph B criteria did not "connect the dots" to explain why Plaintiff can be expected to do a

3   job that requires capacity for following complex instructions despite the finding that she is

4   limited, to some degree, in her capacity for following instructions.  Although the ALJ was

5   "thorough in tying the medical record and [claimant's] testimony to a finding that her mental

6   limitations were mild"—and indeed Plaintiff does not challenge the finding that the limitation

7   was "mild" as opposed to "moderate" or "marked"—the ALJ "did not articulate why those mild

8   limitations required no restrictions."  *Vrdoljak*, 665 F. Supp. 3d at 931.  And the ALJ was not

9   free to "disregard [her] own finding" of the mild limitation.  *Hutton*, 491 F. App'x at 851.

10       In resisting this conclusion, the Commissioner relies on *Woods*, in which the Ninth

11   Circuit extensively discussed how an ALJ's evaluation of medical evidence was supported by

12   substantial record evidence, and as to "mild" limitations commented that "[t]he ALJ's assessment

13   of her residual functional capacity expressly reflected these limitations."  32 F.4th at 793–794.

14   (*See* Dkt. No. 10 at 8, 11.)  The opinion does not indicate how the ALJ "expressly reflected" the

15   limitations.  The court went on to state that the claimant "does not identify any particular

16   evidence that the ALJ failed to consider or explain why the record does not support the ALJ's

17   findings regarding her mental functioning" and found that the ALJ "reasonably rejected" more

18   significant limitations prescribed by the medical expert.  *Woods,* 32 F.4th at 794.  Here, Plaintiff

19   did identify that the ALJ failed to account for or explain how the Plaintiff could perform the

20   PRW given the VE's testimony and her own findings.  (Dkt. No. 8 at 15–16.)  *Woods* does not

21   compel holding that any boilerplate language referencing mental limitations is *per se* sufficient,

22   on a much different record where inclusion of those limitations would have been outcome

23   determinative.  Likewise, the Commissioner relies on a statement in *Hoopai v. Astrue*, that "[w]e

24

have not previously held mild or moderate depression to be a sufficiently severe non-exertional

limitation that significantly limits a claimant's ability to do work beyond the exertional

limitation."  499 F.3d 1071, 1077 (9th Cir. 2007).  (*See* Dkt. No. 10 at 9.)  But the question of

whether Plaintiff's "mild" limitation was "severe" is not at issue in this case, and the Ninth

Circuit's disclaimer of what it has *not* previously held is not *Hoopai*'s holding.

      Finally, the Court cannot find that the legal error here was harmless error on this record.

The ALJ's determination was premised on Plaintiff's ability to do her PRW, with no alternative

finding, and as discussed *supra*, the VE's testimony was that capacity for following instructions

was outcome–determinative to the PRW.  That precludes a finding that the error was harmless.

*Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (an error is harmless

only if it is "inconsequential" to the ALJ's "ultimate nondisability determination."); *see also*

*Castillo*, 599 F. Supp. 3d at 489 ("Here, the ALJ's premised his denial of benefits on a finding

that Castillo could perform her past relevant work. . . . Given the skill level involved here, even

the inclusion of mild mental functional limitations in Castillo's residual functional capacity

could've precluded Castillo from performing her past relevant work.").

### 3.  Remand is Appropriate

      Plaintiff argues that she is entitled to an outright award of benefits.  (Dkt. No. 8 at 20.)

The Court disagrees.  "The decision whether to remand a case for additional evidence, or simply

to award benefits[,] is within the discretion of the court."  *Trevizo v. Berryhill*, 871 F.3d 664, 682

(9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  "'[I]f

additional proceedings can remedy defects in the original administrative proceeding, a social

security case should be remanded' for further proceedings." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014)).[11]

Plaintiff argues that direct award of benefits is appropriate because Plaintiff's PRW is now more than five years old, making it too old for an ALJ to consider. (Dkt. No. 8 at 20) (citing 20 C.F.R. § 404.1560(b)(1)(i)). The Commissioner argues that the "ordinary remand rule" should apply, and because Plaintiff's argument is "entirely one of articulation," the ALJ must be given the "opportunity to explain the decision in greater detail." (Dkt. No. 10 at 16–17) On reply, Plaintiff further argues that the combination of her age (over 55) and the ALJ's findings require a finding of disability and an award of benefits under Medical-Vocational Rule 202.06, under which a person with a "severe" medical impairment that limits them to light work is deemed disabled if they are of an "advanced age" and have skilled or semiskilled past work with skills that are not transferable.[12] (Dkt. No. 11 at 4.)

The Court agrees with the Commissioner that the ALJ should have an opportunity to correct the legal error identified, a failure of explanation. Likewise, Plaintiff may argue on remand that she is entitled to an award of benefits under relevant SSA regulations, but the ALJ should consider those arguments in the first instance. Accordingly, the Court will remand for further proceedings.

---

[11] The Ninth Circuit does apply a "credit-as-true" rule when an ALJ has improperly rejected evidence, *see Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017), but improper rejection of evidence has not been raised here.

[12] Social Security Program Operations Manual System (POMS), DI 25025.035 Tables No. 1, 2, 3, and Rule 204.00 (June 26, 2020), https://secure.ssa.gov/apps10/poms.NSF/lnx/0425025035.

# VI    ORDER

Plaintiff's petition for judicial review of a final decision by SSA pursuant to 42 U.S.C. § 405(g) is GRANTED, the decision is REVERSED, and this matter is REMANDED under the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Dated this 20th day of June, 2025.

David G. Estudillo
United States District Judge

ORDER REVERSING AND REMANDING FOR FURTHER PROCEEDINGS - 19